Evelyn Ireland,

                      Plaintiff,              Civ. No. 12-2467 (RHK/TNL)

v.                                           **MEMORANDUM OPINION AND ORDER**

Lear Capital, Inc., *et al.*,

                      Defendants.

Kevin S. Sandstrom, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Stillwater, Minnesota, for Plaintiff.

Dean C. Eyler, Matthew G. Plowman, Gray, Plant, Mooty, Mooty & Bennett, PA, Minneapolis, Minnesota, Seth E. Pierce, Mitchell, Silberberg & Knupp, LLP, Los Angeles, California, for Defendants.

## INTRODUCTION

This action arises out of the purchase of "numismatic" gold coins[1] by Plaintiff Evelyn Ireland from Defendant Lear Financial, Inc. ("Lear").[2] Ireland sued Lear and two of its employees, Joanne Verbon and Bradford Kaye (together with Lear, "Defendants"), in Minnesota state court, seeking damages due to misrepresentations regarding the value of the coins she had purchased. Defendants removed the action to this Court and now

---

[1] "Numismatic" coins are valuable for their historical significance or aesthetic value, rather than solely their gold content. See http://www.learcapital.com/info/gold-coin-prices (last visited December 3, 2012).

[2] In 2007, Lear Financial, Inc. changed its name to Lear Capital, Inc., which is also named as a Defendant. Because they are the same entity, they are referred to herein as "Lear."

move to stay or dismiss pending arbitration, or in the alternative, to dismiss pursuant to a forum-selection clause. For the reasons set forth below, the Court will grant their Motion in part and stay the case pending arbitration.

## BACKGROUND

In January 2005, Ireland purchased numismatic coins from Lear. (Compl. ¶ 21.) In connection with this purchase, she signed a document entitled "Shipping Insurance and Account Agreement" (the "Agreement"). (K. Demeritt Decl. Ex. 2.)[3] This document includes an arbitration clause providing:

> **Arbitration**: Any controversy arising from or related to transactions between a purchaser and [Lear] shall be resolved by mandatory binding arbitration in accordance with the Rules of the American Arbitration Association and conducted in Los Angeles, California. To the extent not inconsistent with the Rules, service of process on purchasers resident or domiciled outside the State of California may be made by Certified Mail, Return Receipt Requested. Judgment upon the award of the arbitrator shall be entered in any court of competent jurisdiction.

(Id. ¶ 5.) It also includes a forum-selection clause providing that jurisdiction and venue for any disputes arising out of the Agreement "shall be in Los Angeles, California." (Id. ¶ 7.) In December 2009, Ireland resold to Lear some of the coins she had purchased in 2005 and used the proceeds to purchase a second set of coins from it.[4] (Compl. ¶ 28.)

---

[3] Motions to stay pending arbitration, like motions to compel arbitration, "are treated as motions to dismiss for lack of subject-matter jurisdiction," and hence the Court "may consider matters beyond the pleadings in resolving such motions." Jann v. Interplastic Corp., 631 F. Supp. 2d 1161, 1162 n.1 (D. Minn. 2009) (Kyle, J.), overruled on other grounds, Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 770 (8th Cir. 2011).

[4] This second transaction is subject to the Agreement, due to a clause providing that "any additional transactions between the Parties of the kind contemplated by

In 2011, Ireland became concerned about the value of the coins and, after speaking with a local coin dealer, contacted Lear about her concerns. (Id. ¶ 34.) She first spoke with Verbon, who told her that her coins were worth $180,000. (Id. ¶¶ 34-35.) After indicating this was unacceptable, she was transferred to Verbon's supervisor, Kaye, who informed her that her coins were actually worth $190,000. (Id. ¶¶ 36-37.) Ireland was still unsatisfied, so she further investigated the issue, ultimately concluding that the coins' worth had been "misrepresented and overvalued." (Id. ¶¶ 40-46.)

On August 15, 2012, Ireland filed this action in the Hennepin County, Minnesota District Court against Lear, Verbon, and Kaye, alleging fraud, violation of Minnesota consumer protection laws, breach of fiduciary duty, and tortious interference with prospective economic advantage. (Id. ¶¶ 48-83.) Defendants removed the action to this Court and, citing the Agreement, now move to stay or dismiss the case pending arbitration, or in the alternative, to dismiss pursuant to the forum-selection clause. The Motion has been fully briefed, the Court heard oral argument on November 19, 2012, and the Motion is now ripe for disposition.

## STANDARD OF DECISION

Through the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, Congress has established a strong federal policy in favor of arbitration. Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce. . . shall be

---

this Agreement shall be subject to the terms and conditions set forth herein." (K. Demeritt Decl. Ex. 2 ¶ 5.)

- 3 -

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[5] And Section 3 of the Act provides that a party may petition the court in which an action is pending to stay the matter until arbitration has been had in accordance with the terms of the agreement.

**ANALYSIS**

Notwithstanding the arbitration clause in the Agreement, Ireland argues that she cannot be forced to arbitrate this dispute because the clause is unenforceable for unconscionability. (Mem. in Opp'n at 5.) Defendants respond that issues of arbitrability, including the validity of the arbitration clause and whether it is unconscionable, must be decided by an arbitrator rather than this Court. (Def. Mem. at 10.) The Court agrees with Defendants.

Under the FAA, attacks on the validity of a contract containing an arbitration clause, rather than the clause itself, are to be decided by an arbitrator. Preston v. Ferrer, 552 U.S. 346, 353 (2008) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967)). By contrast, "[i]f a party challenges the validity . . . of the precise [arbitration clause] at issue, the federal court must consider the challenge." Rent-A-Ctr., W., Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010). Yet, parties to a contract can alter this rule and delegate to the arbitrator "gateway" issues of arbitrability. Id. at 2777. An arbitration clause must contain an expression of "clear and unmistakable" intent by

---

[5] This language has been given broad application, reaching "to the limits of Congress' Commerce Clause power." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 268 (1995). No party disputes that the arbitration clause in question here is in a contract covered by the FAA.

the parties before a court will find that they agreed to reserve threshold issues of arbitrability for the arbitrator. Id. at 2778; Wootten v. Fisher Invs., Inc., 688 F.3d 487, 493 (8th Cir. 2012); Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 920 (9th Cir. 2011); Hartley v. Superior Court, 127 Cal. Rptr. 3d 174, 177 (Cal. Ct. App. 2011).[6]

Here, Ireland briefly suggests that the Agreement *as a whole* is invalid, but she stops short of actually challenging the validity of that contract. Instead, she "challenges the enforceability of the arbitration [clause] in particular." (Mem. in Opp'n at 7.) As noted above, that clause provides that any controversy related to transactions between Ireland and Lear "shall be resolved by mandatory binding arbitration in accordance with the Rules of the American Arbitration Association." (K. Demeritt Decl. Ex. 2, ¶ 5.) AAA Rule 7, in turn, provides in relevant part that arbitrators determine their own jurisdiction, including "the existence, scope or validity of the arbitration agreement." (D. Eyler Decl. Exs. 1-4, Rule 7.) Due to this language, courts have repeatedly recognized that incorporation of the AAA Rules into an arbitration clause manifests a "clear and unmistakable" intent to leave issues of arbitrability to the arbitrator. E.g., Fallo v. High-Tech Inst., 559 F.3d 874, 877 (8th Cir. 2009); Fadal Machining Ctrs., LLC v. Compumachine, Inc., 461 F. App'x 630, 632 (9th Cir. 2011); Rodriguez v. Am. Techs., Inc., 39 Cal. Rptr. 3d 437, 446 (Cal. Ct. App. 2006); but cf. Ajamian v. CantorCO2e, L.P., 137 Cal. Rptr. 3d 773, 788-89 (Cal. Ct. App. 2012) (suggesting that

---

[6] The parties disagree about what law governs, citing Eighth Circuit, Ninth Circuit, and California state cases. The Court need not wade into their disagreement, because it finds the result is the same under each.

- 5 -

incorporation of AAA Rules does not show clear and unmistakable intent, but declining to decide case on that ground).

In her brief and at oral argument, Ireland relied upon two Ninth Circuit cases, Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996 (9th Cir. 2010), and Nagrampa v. MailCoups, Inc., 469 F.3d 1257 (9th Cir. 2006), to argue that issues of arbitrability must be decided by the Court. But neither of those cases addressed whether incorporation of the AAA Rules manifests a "clear and unmistakable" intent to leave issues of arbitrability to the arbitrator. By contrast, the "great weight of authority," including the Ninth Circuit in Fadal Machining, has recognized that "incorporation of the AAA rules evidences a clear and unmistakable intent that arbitrability is for the arbitrator to decide." Sys. Res. & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc., 840 F. Supp. 2d 935, 941 & nn.2-3 (E.D. Va. 2012) (collecting cases). This Court agrees with this "great weight of authority" and determines that inclusion of the AAA Rules in the arbitration clause here clearly and unmistakably shows that the parties intended to let the arbitrator decide issues of arbitrability. Consequently, the parties must arbitrate their dispute, the issue of unconscionability must be decided by the arbitrator, and the Court must "stay . . . th[is] action until such arbitration has been had." 9 U.S.C. § 3.[7]

---

[7] Defendants contend, and Ireland does not dispute, that Verbon and Kaye are entitled to invoke the arbitration clause as employees and agents of Lear, even though they were not parties to the Agreement. See also Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006) ("An agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound.").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Stay or Dismiss Case Pending Arbitration, or in the Alternative to Dismiss Pursuant to Forum Selection Clause (Doc. No. 5), is **GRANTED IN PART** and this action is **STAYED** pending arbitration.


Date:  December 4, 2012                     s/Richard H. Kyle
                                            RICHARD H. KYLE
                                            United States District Judge